**United States District Court**
**District of Massachusetts**

| | |
|---|---|
| ─────────────────────────── ) | |
| PATRICE COMPERE and MARLY ) | |
| COMPERE BERNADO, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. |
| ) | 18-12431-NMG |
| DENIS RIORDAN, LEE FRANCIS ) | |
| CISSNA, the DEPARTMENT OF ) | |
| HOMELAND SECURITY, KIRSTJEN ) | |
| NIELSEN and TODD LYONS, ) | |
| ) | |
| Defendants. ) | |
| ─────────────────────────── ) | |

**MEMORANDUM & ORDER**

GORTON, J.

    This case arises out of removal proceedings brought against

Patrice Compere ("Compere").  Compere and his mother, Marly

Compere Bernado, also known as Marly Brizard ("Brizard" or

collectively "plaintiffs"), filed a complaint against the

Department of Homeland Security and various officers and

officials of the Department of Homeland Security, the United

States Citizenship and Immigration Services (the "USCIS") and

Immigration and Customs Enforcement ("ICE") (collectively

"defendants") alleging that they have unlawfully deprived

Compere the opportunity to adjudicate his application for

adjustment of status.  Specifically, plaintiffs submit that

defendants violated the Administrative Procedure Act, 5 U.S.C.

§ 555(b), by unreasonably failing to produce for nearly 15 years the necessary documentation for Compere to file the Form I-485 Adjustment of Status application.  As a result of that allegedly unreasonable delay in agency action, Compere is no longer eligible for naturalization because of subsequent criminal convictions and is subject to a final order of removal from the United States.

Plaintiffs seek a writ of mandamus to compel the USCIS to adjudicate Compere's application for adjustment of status nunc pro tunc to April, 2004, when the USCIS first failed to produce the necessary documentation to plaintiffs for that application. Pending before the Court is 1) plaintiffs' motion for a preliminary injunction to stay Compere's removal to Haiti pending the adjudication of the merits of the writ of mandamus and 2) defendants' motions to dismiss the original and amended complaints.

I.   **Background**

A.   **The Parties**

Compere is a 31-year-old native and citizen of Haiti.  He is a resident of Stoughton, Massachusetts, but is not a citizen of the United States nor a lawful permanent resident.  He entered the United States on humanitarian parole in August, 1989, at the age of two.  Compere grew up and went to school in the United States, speaks very little Haitian Creole or French,

has no immediate family in Haiti and has two children who are both U.S. citizens.

Brizard is Compere's mother.  She also resides in Stoughton, Massachusetts, and is a naturalized U.S. citizen. She came to the United States in 1987 after Compere was born. She was 13 years old at the time and entered the United States as a derivative of her mother (Compere's grandmother) who was then a lawful permanent resident.

The Department of Homeland Security is a department under the Executive Branch of the U.S. federal government responsible for all matters related to public security, including matters regarding citizenship and immigration.  Defendant Kirstjen Nielsen is the acting Secretary of the Department of Homeland Security and is responsible for the administration of the immigration laws.

Defendant Lee Francis Cissna is the Director of the USCIS, the branch of the Department of Homeland Security charged with administering the country's naturalization and immigration system, including the adjudication of immigration applications. Cissna is the official charged with supervisory authority over all operations of the USCIS.  Defendant Denis Riordan is the District Director of the Boston District of the USCIS.  Riordan is the official of the USCIS with general supervisory authority over all operations within the Boston District.

Defendant Todd Lyons is the Acting Field Officer of ICE in Boston, Massachusetts, which is the federal law enforcement agency tasked with enforcing U.S. immigration laws.  In his role as Acting Field Officer, Lyons is responsible for the enforcement of federal immigration laws, including the deportation of removeable aliens, in Connecticut, Maine, Massachusetts, New Hampshire, Rhode Island and Vermont.

**B.   Facts**

Brizard became a naturalized U.S. citizen in September, 1999, when Compere was 12 years old.  In 2002, Brizard sought the assistance of an attorney, Daniel Honore, to assist her with applying to adjust Compere's status to lawful permanent resident.  Attorney Honore apparently told Brizard that she would need a form known as an I-94, which is an arrival and departure record issued by a Customs and Border Protection Officer to foreign visitors entering the United States.  Brizard did not have the original I-94 for Compere from 13 years earlier so Attorney Honore helped her apply for a replacement I-94 in April, 2003.

At some point in communicating with the USCIS, Attorney Honore allegedly informed the agency that it should correspond directly with him rather than with Brizard.  The USCIS purportedly did not acknowledge Attorney Honore's request and instead initially sent a denial of the request for a replacement

-4-

I-94 directly to Brizard's address in September, 2003,
indicating that the agency had no record of Compere's arrival in
the United States.  After learning of the denial, Brizard
alleges that she reached out to Attorney Honore who told her
that without the I-94, there was nothing more that he could do
for her son.  Attorney Honore suggested that Brizard send
Compere back to Haiti to apply for an immigrant visa through
consular processing but Brizard refused to do so because she had
no family in Haiti at the time.  She sought no further advice
from Attorney Honore from that point forward.

The USCIS reversed its earlier denial of Brizard's
application for a replacement I-94 just a few months later.  In
April, 2004, the USCIS sent a letter addressed to Compere at his
home address informing him that he appeared to be on a
humanitarian parolee status and that his application would be
transferred to the district office in Boston for processing.
Neither Brizard nor Compere apparently ever physically received
or saw that letter.  From April, 2004, to December, 2018, the
Boston office of the USCIS took no action to produce the
replacement I-94 nor did Brizard or Compere inquire into the
status of that application or otherwise apply to adjust
Compere's status to lawful permanent resident.

Compere became 18 years old in October, 2005.  Since
becoming an adult, he has been arrested and convicted for

several trespassing and drug-related offenses.  In 2011, he was
convicted for possession to distribute heroin, a Class A
substance.  In 2015, he was convicted for possession of
suboxone, a Class B Substance.  In 2016, he was convicted for
possession of Adderall-Amphetamine, a Class B substance.  He has
served sentences for all three convictions.

In 2016, Compere was in a detox program in Philadelphia,
Pennsylvania when ICE officers met with and questioned him.
After leaving the detox program, he did not hear from ICE so he
visited the USCIS office in Lawrence, Massachusetts.  The USCIS
informed him that he should consult an attorney because it had
no information on him.  In 2017, Compere finished his probation
program and his probation officer told him to contact ICE.
Compere met with an Officer Hamel who told him to follow-up with
certain documentation, including his mother's naturalization
certificate, his birth certificate and his proof of entry.

After not hearing from Officer Hamel for several months,
Compere called him in October, 2017.  Officer Hamel told Compere
that he would need a hearing with an immigration judge which
Compere took to mean that he had to attend Immigration Court
that same day.  Compere went to the Immigration Court located in
Boston and called Officer Hamel again.  Officer Hamel informed
Compere that his hearing would not be that day but that he
should wait at the court for Hamel to pick him up.  Compere

complied with that instruction and was arrested and taken into ICE custody by Officer Hamel later that day.

### C.  Procedural History

Compere was placed in removal proceedings and charged as an arriving alien with three counts of removability: 1) not having a proper immigrant visa in violation of 8 U.S.C. § 1182(a)(7)(A)(i)(I); 2) being someone the Attorney General has reason to believe is a trafficker of a controlled substance in violation of 8 U.S.C. § 1182(a)(2)(C)(i); and 3) having been convicted of a violation of any law or regulation relating to a controlled substance in violation of 8 U.S.C. § 1182(a)(2)(A)(i)(II).  In 2018, after several hearings, an immigration judge found Compere to be removable.

Compere filed an application for relief under the Convention Against Torture.  He claims that he is afraid to return to Haiti because he could potentially face torture and prolonged imprisonment upon arrival as a criminal deportee.  He also submits that his close relationship to Clarens Renois, a well-known political opponent of the Haitian government and former presidential candidate, increases his risk of being detained and tortured upon arrival in Haiti.

His application under the Convention Against Torture was denied in April, 2018.  The Immigration Judge found that Compere had not proven that it was more likely than not that he would be

tortured if deported to Haiti.  The Board of Immigration Appeals
(the "BIA") affirmed that denial in September, 2018.  Compere
then filed a petition for review and a motion for a stay of
removal with the First Circuit Court of Appeals in October,
2018.  In November, 2018, the First Circuit denied Compere's
motion to stay, determining that his request was
jurisdictionally barred and that he was unlikely to succeed on
the merits.  The following day, Compere filed a motion to reopen
his case with the BIA, arguing that he had obtained new evidence
to support his claim for deferral of removal under the
Convention Against Torture.

The day after Compere filed his motion to reopen with the
BIA, he filed a petition for writ of habeas corpus in the
District of New Hampshire where he was being detained.  In that
petition, Compere sought, among other things, a stay of his
removal pending a ruling from the BIA on his motion to reopen
his case.  Shortly after filing the habeas petition in the
District of New Hampshire, Compere filed the present complaint
in this Court seeking a writ of mandamus to compel defendants to
accept and adjudicate his application for adjustment of status
nunc pro tunc to April, 2004.  Within two weeks of filing the
complaint in this Court, the USCIS sent Compere a replacement I-
94 after investigating the allegations in his complaint.

In January, 2019, United States District Judge Paul
Barbadoro of the District of New Hampshire entered a stay of
Compere's removal pending a ruling from the BIA on his motion to
reopen. Compere v. Nielsen, Case No. 18-cv-1036-PB, 2019 WL
332193, at *9 (D.N.H. Jan. 24, 2019).  Judge Barbadoro
determined that, although 8 U.S.C. §§ 1252(b)(9) and 1252(g)
likely applied to strip the District Court of jurisdiction over
Compere's challenge to his removal proceedings, application of
those provisions to bar his habeas petition would violate the
Suspension Clause of the Constitution because 1) there would be
no federal court review of the denial of Compere's emergency
motion to stay while his motion to reopen was pending before the
BIA and 2) he would be unable to litigate effectively his motion
to reopen from Haiti. Id. at *5-9.  Judge Barbadoro explicitly
limited the relief ordered, however, to a stay of removal that
would remain in place only until Compere's motion to reopen was
resolved by the BIA and he had been given an opportunity to
appeal any adverse ruling. Id. at *9.

In February, 2019, the BIA denied Compere's motion to
reopen, finding that the purportedly new evidence provided was
substantially similar to that previously offered to the
Immigration Judge and did not materially alter the judge's
findings or decision.  Compere had 30 days from the date of that

-9-

decision to appeal the BIA's denial of his motion to reopen to the First Circuit.

Rather than file such an appeal, Compere instead filed in March, 2019, an amended complaint with this Court naming Nielsen and Lyons as additional defendants and a motion for a temporary restraining order and a preliminary injunction (Docket No. 15). He seeks an order from this Court staying his removal until his petition for writ of mandamus has been properly adjudicated. Shortly after filing the motion, this Court denied the motion for a temporary restraining order and ordered plaintiffs to give requisite notice to defendants of a hearing on their motion for a preliminary injunction.  The next day, defendants filed a motion to dismiss for lack of jurisdiction and failure to state a claim (Docket No. 20).

D.  **Parties' Arguments**

Plaintiffs assert that they are entitled to a preliminary injunction ordering a stay of Compere's removal.  First, they contend that they have a substantial likelihood of success on the merits of their claim because other courts outside this Circuit have recognized the availability of nunc pro tunc relief in the immigration context and the First Circuit has not definitively foreclosed such relief.  Plaintiffs submit that they have a valid claim under the Administrative Procedure Act, 5 U.S.C. § 555(b), because defendants have failed to conclude

-10-

agency proceedings within a reasonable time by not sending
Compere a replacement I-94 for nearly 15 years.  Plaintiffs
contend that they are in no way responsible for that
unreasonable delay which prevented Compere from applying for an
adjustment of status.

It is the plaintiffs' position that, had Compere been
provided a replacement I-94 in 2004 when the USCIS first
discovered its mistake, Compere would have been able to file a
timely application for adjustment of status before his 18th
birthday, which would have qualified him automatically to derive
citizenship from his naturalized mother under 8 U.S.C. § 1431.
Compere would thus not have to satisfy the more restrictive
requirements of proving continuing good moral character at the
time of his naturalization application which is now precluded by
his multiple criminal convictions. See 8 C.F.R. §§ 316.10(a)(1),
316.10(b)(1)(ii); see also 8 U.S.C. §§ 1101(a)(43)(B),
1101(f)(8), 1421(d).  Had Compere's application for adjustment
of status been timely processed in 2004, which would have
resulted in his automatic naturalization, he would not now be
subject to removal.

In addition to proving a substantial likelihood of success
on the merits, plaintiffs also submit that Compere will suffer
irreparable harm if he is deported to Haiti before he can fully
litigate his petition for writ of mandamus.  Plaintiffs contend

-11-

that Compere will be subject to detention and torture upon
arrival in Haiti and that his criminal convictions will prevent
him from returning to the United States even if he is ultimately
successful on his mandamus petition.  Finally, plaintiffs argue
that the balance of equities favors a stay of Compere's removal.

In response to plaintiffs' motion for a preliminary
injunction, defendants maintain that plaintiffs' requested
relief must be denied because they do not have a substantial
likelihood of success on the merits of their claim.  First,
defendants explain that this Court lacks subject matter
jurisdiction under 8 U.S.C. § 1252(g) which strips district
courts of jurisdiction over claims arising from a removal order.
Rather, an alien must seek a stay of a removal order through
established administrative procedures subject to direct review
of the federal Courts of Appeals. 8 U.S.C. §§ 1252(a)(4)-(5),
1252(d).  Defendants submit that plaintiffs' claim for a stay of
removal arises out of Compere's final order of removal and thus
falls directly within that jurisdiction-stripping provision.

Furthermore, defendants contend that plaintiffs cannot
demonstrate a likelihood of success on their claim for mandamus
relief in the form of nunc pro tunc adjudication of Compere's
application for adjustment of status.  Defendants assert that
the First Circuit has already decided the limits of nunc pro
tunc authority in the immigration context and has declined to

-12-

apply that form of relief. See Fernandes-Pereira v. Gonzales, 417 F.3d 38, 47 (1st Cir. 2005).

Defendants also assert that plaintiffs have failed to exhaust their administrative remedies because Compere has never actually applied for lawful permanent resident status. Defendants explain that Compere could have applied for lawful permanent resident status in 2004 and thereafter even without a replacement I-94 because the application form explicitly allows for "other evidence of [the applicant's] status". Defendants argue that the fact that Attorney Honore misadvised plaintiffs that they required an I-94 for the adjustment of status application does not relieve them of their duty to exhaust their administrative remedies.

## II. Plaintiff's Motion for a Preliminary Injunction

### A. Legal Standard

In order to obtain a preliminary injunction, the moving party must establish 1) a reasonable likelihood of success on the merits, 2) the potential for irreparable harm if the injunction is withheld, 3) a favorable balance of hardships and 4) the effect on the public interest. Jean v. Mass. State Police, 492 F.3d 24, 26-27 (1st Cir. 2007). Out of these factors, the likelihood of success on the merits "normally weighs heaviest in the decisional scales." Coquico, Inc. v. Rodriguez-Miranda, 562 F.3d 62, 66 (1st Cir. 2009).

-13-

The Court may accept as true "well-pleaded allegations [in the complaint] and uncontroverted affidavits." Rohm & Haas Elec. Materials, LLC v. Elec. Circuits, 759 F. Supp. 2d 110, 114, n.2 (D. Mass. 2010) (quoting Elrod v. Burns, 427 U.S. 347, 350, n.1 (1976)). The Court may also rely on otherwise inadmissible evidence, including hearsay, in deciding a motion for preliminary injunction. See Asseo v. Pan Am. Grain Co., Inc., 805 F.2d 23, 26 (1st Cir. 1986). Ultimately, the issuance of preliminary injunctive relief is "an extraordinary and drastic remedy that is never awarded as of right." Peoples Fed. Sav. Bank v. People's United Bank, 672 F.3d 1, 8-9 (1st Cir. 2012) (quoting Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc., 645 F.3d 26, 32 (1st Cir. 2011)).

**B.  Application**

Plaintiffs cannot prove a reasonable likelihood of success on the merits of their claim because the Court simply lacks jurisdiction to grant a stay of a final order of removal. See Doe v. Smith, Civil Action No. 18-11363-FDS, 2018 WL 4696748, at *6 (D. Mass. Oct. 1, 2018) (discussing the District Court's lack of jurisdiction to order a stay of removal under 8 U.S.C. § 1252). Congress has provided that

> no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

-14-

§ 1252(g).  While a petitioner may seek to reopen removal

proceedings or a stay of removal, he or she must do so through

the procedure established by statute and regulation. See 8

C.F.R. §§ 1003.2(c), 1003.2(f), 1003.23(b)(1)(v), 1003.23(b)(3).

A petitioner must first exhaust all administrative remedies

through the immigration courts and the BIA. § 1252(d)(1).

Decisions of the immigration courts and the BIA are then subject

to judicial review through a petition filed directly with the

appropriate court of appeals. § 1252(a)(5) ("Notwithstanding any

other provision of law (statutory or nonstatutory), including

section 2241 of Title 28, or any other habeas corpus provision,

. . . a petition for review filed with an appropriate court of

appeals in accordance with this section shall be the sole and

exclusive means for judicial review of an order of removal

entered or issued under any provision of this chapter . . . .");

see also  § 1252(a)(4) (same with respect to claims under the

Convention Against Torture).

Furthermore, the statute provides that

[j]udicial review of all questions of law and fact,
including interpretation and application of constitutional
and statutory provisions, arising from any action taken or
proceeding brought to remove an alien from the United
States under this subchapter shall be available only in
judicial review of a final order under this section.
Except as otherwise provided in this section, no court
shall have jurisdiction, by habeas corpus under section
2241 of Title 28 or any other habeas corpus provision . . .
or by any other provision of law (statutory or

nonstatutory), to review such an order or such questions of
law or fact.

§ 1252(b)(9).  Taken together, those provisions clearly
articulate the intention of Congress to "strip[] federal
district courts of jurisdiction to review challenges by aliens
to their final orders of removal." Smith, 2018 WL 4696748, at *6
(citing Ishak v. Gonzales, 422 F.3d 22, 27-28 (1st Cir. 2005));
see also Baptiste v. Attorney Gen. of U.S., Civ. No 18-
16826(KM), 2019 WL 1110765, at *2-3 (D.N.J. Mar. 8, 2019)
(holding that the Court lacked jurisdiction to grant a stay of a
final order of removal under § 1252(g) in the context of an
action seeking a writ of mandamus).

     Compere is subject to a final order of removal and he seeks
to enjoin ICE from enforcing that order of removal.  His claim
for injunctive relief falls, therefore, directly within the
jurisdictional bar set by Congress.  Regardless of how
sympathetic Compere's situation may be or the risk of harm he
faces if deported to Haiti, it would be a dereliction of this
Court's duty to enforce the law if it were to stay the removal.
Accordingly, the Court will deny plaintiffs' motion for a
preliminary injunction to stay Compere's removal because it
lacks subject matter jurisdiction to grant such relief.

     In addition to lacking subject matter jurisdiction, it is
doubtful that this Court has the authority to grant the ultimate

relief sought in this case, namely compelling the USCIS to accept and adjudicate Compere's application to adjust his immigration status nunc pro tunc to April, 2004.  In Fernandes-Pereira v. Gonzales, the First Circuit declined to adopt the approach of the Second Circuit Court of Appeals to adjudicate an application for discretionary relief from deportation nunc pro tunc to the date of the alien's original hearing. 417 F.3d at 46-47.  While decided in the context of a different statutory provision, the First Circuit noted that the only other circuits that have applied the nunc pro tunc doctrine to rectify significant errors in immigration proceedings involved constitutional violations of the right to counsel in those proceedings. Id. at 48.  No such violation is alleged here.

Plaintiffs contend that Fernandes-Pereira does not foreclose the nunc pro tunc relief sought because the Court in that case found that the government had not acted in bad faith but rather had acted under a "good faith legal interpretation of the law at the time". Id. at 47-48.  Plaintiffs assert that the government here did not act in good faith, as evidenced by 1) the USCIS's concession in April, 2004, that it had mistakenly denied plaintiffs' application for a replacement I-94, 2) its subsequent failure to process plaintiffs' application for a replacement I-94 for nearly 15 years and 3) its ability to

produce quickly the replacement I-94 in response to the
complaint filed in this case.

Even assuming that there is evidence of intentional
misconduct on the part of defendants, plaintiffs cite no caselaw
from this Circuit applying the <u>nunc</u> <u>pro</u> <u>tunc</u> doctrine in the
manner sought.  At least one other District Court addressing a
similar claim for <u>nunc</u> <u>pro</u> <u>tunc</u> adjudication of an alien's
application for adjustment of status determined that his
subsequent criminal convictions precluded that form of relief.
<u>Garcia</u> v. <u>U.S. Citizenship & Immigration Servs.</u>, 168 F. Supp. 3d
50, 68-69 (D.D.C. 2016).

The Court in <u>Garcia</u> noted that the regulations of the
Department of Homeland Security require an applicant for lawful
permanent residence to demonstrate that he or she continues to
be eligible through the time of application. <u>Id.</u> at 69.  The
requested relief would, therefore, require the Court "to order
USCIS to turn a blind eye to [the plaintiff's] subsequent
criminal activities". <u>Id.</u> ("[E]ven if [plaintiff] were eligible
for the immigration benefit—[lawful permanent resident] status—
as of the time he filed (in 1981), the regulation requires that
he continue to be eligible until the time the status is granted—
<u>i.e</u>, today.").  In light of that extraordinary request and
plaintiff's unclean hands, including his own delay in seeking to
adjudicate his application for adjustment of status, the Court

held that the plaintiff was not entitled to nunc pro tunc as an
equitable matter. Id. at 69-70; see also Vernon v. Attorney Gen.
of U.S., 181 Fed. App'x 201, 203 (3d Cir. 2006) (holding that
plaintiff was not entitled to have his application for
naturalization adjudicated nunc pro tunc because of his own
delay in failing to seek clarification or reconsideration of
that application for 17 years).

The Court finds the reasoning of Garcia to be persuasive.
Just as did the plaintiff in Garcia, Compere has several
criminal convictions that make him ineligible for lawful
permanent resident status or naturalization were his application
adjudicated today.  Furthermore, neither Compere nor Brizard
sought clarification of his immigration status or filed any
application for adjustment of status for nearly 15 years after
the initial denial of his application for a replacement I-94.
Nor have plaintiffs proffered any evidence indicating that the
USCIS acted in bad faith, rather than merely with neglect, in
failing to produce the requested documentation for nearly 15
years.  Absent a showing of authority demonstrating plaintiffs'
entitlement to this unusual form of relief, the Court finds that
they do not have a reasonable likelihood of success on the
merits of their claim for nunc pro tunc adjudication of
Compere's application for adjustment of status.

Because the Court finds that there is no reasonable likelihood of success on the merits of plaintiffs' claim for a stay of removal, it declines to address the other prerequisites for injunctive relief.

### ORDER

For the forgoing reasons, plaintiff's motion for a preliminary injunction (Docket No. 15) is **DENIED**.


**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated March 20, 2019